## Rock Island & Peoria Ry. Co. v. Stephen Dormady.

1. Railroads—*Switching in Freight Yards.*—Railroad companies, in doing switching in their freight yards or in freight yards with which they are connected, are not compelled to avoid striking standing freight cars, nor are they compelled to see to it that men at work on the standing cars and aware of the approach of moving cars, should get off before the moving cars are permitted to strike or bump against the stationary cars.

2. Same—*Exercise of Care by Workmen in Switch Yards.*—Men at work on freight cars in freight yards and who know that in the customary method of switching there the cars do strike together, and that the force may overcome their natural equilibrium, and who see that switching is being done and that such striking is about to occur, are required to protect themselves from danger, and if they do not, they assume the risk.

3. Appellate Court—*Considers Testimony as Well as Law.*—It is the duty of the Appellate Court, under the law as it exists in this State, to consider the testimony, and if they find that the judgment and verdict are not supported by it, or are clearly against the weight of the evidence, to set aside such verdict and reverse such judgment.

Trespass on the Case.—Personal injuries.  Appeal from the Circuit Court of Rock Island County; the Hon. William H. Gest, Judge presiding.  Heard in this court at the April term, 1902.  Reversed.  Opinion filed July 18, 1902.

Jackson & Hurst, attorneys for appellant.

McEniry & McEniry, attorneys for appellee.

Mr. Justice Dibell delivered the opinion of the court.

Dormady was upon a coal car standing on a switch track at Sherrard, in Mercer county.  Other cars being pushed by the railway company into and upon said switch were propelled against the car upon which Dormady was, and he lost his balance and fell under the next car, and received serious injuries.  He brought this suit against the railway company to recover damages therefor.  The declaration contained but one count.  It charged that while plaintiff was exercising due care, defendant carelessly and improperly drove and managed the locomotive attached to the cars being pushed upon said switch, and that when said cars

struck the car on which plaintiff was, they were running at a high rate of speed, to wit, fifteen miles per hour, and that the presence and speed of said locomotive and cars were not known to plaintiff. Plaintiff had a verdict for $3,500 and judgment thereon, and defendant appeals. The only question argued is whether the evidence will support the verdict.

The mine of the Coal Valley Mining Company is north of defendant's main line. Tracks pass from said main line north, to and through and around the buildings at the coal company's shaft, and still further north to higher ground. It is a part of defendant's duty to push empty coal cars up this incline north of the shaft, and leave them on certain switches. When the coal company is ready to load a car, its employes release the brake on the nearest empty car, and the force of gravity propels it down to the shaft, where it is loaded. Dormady was in the employ of the coal company and had been for several years. It was a part of his daily duty and had been for a long time to go upon these empty coal cars, and shovel off slack coal and refuse which had been left there when it was last unloaded, and in winter to also shovel off any snow and ice which had accumulated on the car, thus preparing the car to receive another load of coal. The cars were open flat cars with plank sides and ends from twenty to twenty-four inches high. On the morning of February 16, 1900, several cars stood upon said switch, and Dormady and one Simmons, another employe of the coal company, were at work shoveling the debris off said cars. Defendant's locomotive pushed fifteen empty cars up past the shaft and to and upon the switch where Dormady and Simmons were at work. The north car, the car nearest Dormady and farthest from the engineer, was equipped with a safety device known as the Janney coupler, by which a coupling could be made by striking the cars together with some force, without any one stepping between the cars to make the coupling. The cars coming in, struck the chain of cars upon which Dormady was at work. Dormady was near the south end of the car and he leaned over and placed one hand on the side of the car and also leaned

upon his shovel.    When the cars struck he lost his balance, fell head first between that and the next car, and his legs went across the rail and the wheels passed over them, breaking the bones but not crushing his legs.    Plaintiff was substantially the only witness in his own behalf on the material questions, while defendant produced the conductor, the brakeman, an employe of the coal company who went up the grade with the conductor on the head end of the train as it was pushed north, and Simmons, who was working with Dormady, and also other witnesses.

It is clear the speed was not great or excessive.    Plaintiff does not state the speed, but only that the train struck the standing cars harder than he had known it to do before. That some force must be used to make the safety coupling was testified to by several witnesses for defendant, and was not denied.    It was necessary to prepare the mechanism for the coupling by going in front of the car and opening the knuckle of the coupler.    When the head car was some distance from the standing cars the conductor got off the head car, stepped in front of it, and walked along while he opened the knuckle, then stepped out by the side of the train, gave a signal to slow down, which was obeyed, and then walked by the side of the car, and as fast as the car moved, till it struck the standing car.    The employe of the coal company who was on the head car also got off, and walked by the side of the car, and kept up with it while walking.    The brakeman confirms their testimony.    At the time the cars met, the train was not moving faster than a man walks.

The allegation of the declaration that plaintiff did not know of the approach of the train is not supported by any proof.    Plaintiff testified he saw it coming before it reached the switch which turned it upon the track where the cars stood, upon which he and Simmons were working, and that he did not then know whether the train was coming upon his track or was going to remain upon the other.    He testified he saw it again as it came over the switch, and thought it might strike hard, and called out to Simmons to look out.

Simmons was near the other end of the car and stepped toward the middle, stood erect, and was unharmed. Dormady was near the end of the car toward the approaching train. He did not move toward the middle of the car, as he might have done as easily as Simmons did, but stepped to the side of the car and leaned over, placing his hand on the side of the car, and attempted to brace himself with his shovel, and placed himself in a position which proved to be insecure.

It is clear the conductor twice called out to the man on the car to look out. He did this first before he got off the car to open the knuckle, and again after he had opened the knuckle and stepped out to the side of the train. This is testified to by at least three witnesses, including Simmons, who heard the alarm given twice by some one south of him. At least three witnesses testify the men on the car were standing up and facing them all the time they were coming off the other track. It does not admit of question on the present record that plaintiff, after he knew the train was coming in on his track, and when he knew it might strike hard, and would strike with some force, had time to move away from the end of the car, and would not have been hurt if he had done so. He had been at that particular work at least a year. The putting in of empty cars in this way was a matter of daily occurrence. He was familiar with the Janney coupler (which was in common use), and knew force was used in making the coupling. It is clear the movement of the train and the manner of making the coupling was the usual and customary method employed by defendant theretofore at that mine, and with which plaintiff was well acquainted.

We can not hold it to be the law that a railroad company in doing switching in its freight yards, or in freight yards with which it is connected, must avoid striking standing freight cars, or that if there are men at work on the standing cars, and aware of the approach of moving cars, the railway company must see to it that such men get off before the moving cars are permitted to strike or bump

against the stationary cars.  On the other hand, men at work on freight cars in such yards, and who know that in the customary method of switching there the cars do strike together, and that the force may overcome their natural equilibrium, and who see that switching is being done, and that such striking is about to occur, are required to protect themselves from danger, and if they do not, they assume the risk.  Men are continually on and about cars while switching is going on in railroad yards, and they assume the ordinary and known risks of that business when conducted in the usual and customary manner.

It follows from what has been said that we are clearly of opinion that defendant was not guilty of negligence as charged.  This was an unfortunte accident, with deplorable consequences to plaintiff, for which defendant is not to blame.  The evidence being so overwhelmingly for defendant, we are not at liberty to avoid our duty because the jury has rendered a verdict for plaintiff.

" It is the duty of the appellate courts, under the law as it exists in this state, to consider the testimony, and if they find that the verdict and judgment are not supported by it, or are clearly against the weight of evidence, to set aside such verdict and reverse such judgment.  A performance of this duty is absolutely essential for the preservation of the rights of citizens and property owners in all those classes of cases where the judgments of the appellate courts are final and conclusive upon all questions of fact." C. & E. R. R. Co. v. Meech, 163 Ill. 305; Hawk v. C. B. & N. R. R. Co., 147 Ill. 399.

Apparently all who were cognizant of the facts were witnesses at the trial, and we think it would serve no useful purpose to remand the cause for another trial.  The judgment is therefore reversed.

Finding of Facts to be incorporated in the judgment:

We find from the evidence that defendant was not guilty of the negligence charged in the declaration.